Filed 4/20/15  Beverly Hills Estate, LLC v. Warner CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

|  |  |
|---|---|
| BEVERLY HILLS ESTATE, LLC, | B254276 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. SC120070) |
| v. |  |
| MARTIN WARNER et al., |  |
| Defendants and Appellants. |  |

APPEAL from a judgment of the Superior Court of Los Angeles County, Gerald Rosenberg, Judge.  Reversed and remanded.

Theresa A. Jones for Defendants and Appellants Martin and Susan Warner.

Maureen Jaroscak for Plaintiff and Respondent Beverly Hills Estate, LLC.

_____

Appellants Martin and Susan Warner (collectively, the Warners) appeal from the order denying their motion to set aside the default and default judgment entered against each of them in an unlawful detainer action brought by respondent Beverly Hills Estate, LLC.  Among other arguments, the Warners contend that they were entitled to relief from default under Code of Civil Procedure[1] section 473, subdivision (d) because they were not properly served with a summons and complaint in the action.  The Warners also assert that a summary unlawful detainer proceeding was not properly brought because Beverly Hills Estate owns the land, but not the dwelling house, from which the Warners were removed.  We conclude that both the defaults and the default judgment must be vacated because service of process on the Warners was invalid and the complaint fails to state a cause of action in unlawful detainer.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

## I.    Unlawful Detainer Complaint

On February 14, 2013, Beverly Hills Estate filed an unlawful detainer complaint against the Warners and Does 1 through 10 in Los Angeles County Superior Court.  The complaint alleged that Beverly Hills Estate was the owner of the premises located at 20454 Pacific Coast Highway in Malibu, California, that the Warners were renting the premises pursuant to a written agreement with Beverly Hills Estate's predecessor-in-interest, and that the unnamed Doe defendants were subtenants.  It further alleged that the Warners had been served with five separate notices to quit on December 20, 2012, and failed to comply with the terms of those notices.  Beverly Hills Estate sought possession of the premises, forfeiture of the agreement, past rent in the amount of $27,940.68, rental value damages of $75.11 per day, and attorney's fees and costs.

A copy of the written agreement that formed the basis of Beverly Hills Estate's unlawful detainer action was attached as an exhibit to the complaint.  The first document comprising the agreement, entitled "Lease and Improvement Contract of Sale," was dated

---

[1]    All further statutory references are to the Code of Civil Procedure.

April 26, 1976, and was entered into by Jaycee Investment Co. as the "Lessor and/or Lessor-Seller," and by Floyd and Jean Ruch as the "Lessee and/or Lessee-Buyer" (the "1976 Agreement"). Paragraphs 1 through 3 of the 1976 Agreement provided that the Lessee was leasing certain real property from the Lessor as described in Exhibit A-1 for a period of 87 years, commencing on July 1, 1976 and continuing through September 30, 2063, at a monthly rent of $195, subject to an annual consumer price index increase. Exhibit A-1 described the leased premises as "[a]n undivided one-half interest in Lot 4 of Tract No. 26816, in the county of Los Angeles, state of California as per map recorded in book 694 pages 66 and 67 of Maps, in the office of the county recorder of said county . . . EXCEPT all buildings and improvements situated on said land, which are and shall remain real property." Paragraphs 9 and 10 of the 1976 Agreement provided that the Buyer was purchasing a certain real property improvement from the Seller as described in Exhibit A-2 for the purchase price of $25,868.32, payable in monthly payments of $226, plus interest. Exhibit A-2 described the purchased property as "[t]hat portion of the residential dwelling unit and garage situated on Lot 4 of Tract No. 26816, in the county of Los Angeles, state of California as per map recorded in book 694 pages 66 and 67 of Maps, in the office of the county recorder of said county. . . ."[2]

The second document comprising the agreement, entitled "Modification and Amendment to Lease and Improvement Contract of Sale," was dated May 26, 1985, and was entered into by Jaycee Investment Co. as the "Lessor and/or Seller," and by the Warners as the "Lessee and/or Buyer" (the "1985 Amendment"). The 1985 Amendment provided that the Warners had succeeded to the interest held by Jean and Floyd Ruch in the 1976 Agreement by assignment, and that in consideration of the Lessor-Seller's consent to the assignment, the parties had agreed to certain amendments to the 1976

_____

[2]     The copies of the 1976 Agreement included in the record on appeal are not fully legible. While the above description provides a summary of certain legible provisions in the agreement, which are relevant to the issues on appeal, it is not intended to set forth all of the contract terms. Neither party has identified any other provisions in the agreement that would support its arguments on appeal.

3

Agreement. An amended provision entitled "Rental" stated that the Lessee agreed to pay the Lessor a monthly rent of $437.52, subject to an annual consumer price index increase, for the leased premises. Amended provisions on assignments stated that the "Lessee's interest in this Lease may not be assigned, sublet, or otherwise transferred" without the Lessor's prior written approval, and the "Buyer may not assign, transfer or attempt to assign or transfer any right or interest it may have in and to the dwelling unit" without the Seller's prior written consent. An amended provision entitled "Remedies of the Seller Under Contract of Sale" stated that if the Buyer breached any provision relating to the sale of the dwelling unit, the Seller had the right to declare all sums due under the contract of sale immediately due and payable, take possession of the dwelling unit and terminate the Buyer's rights under the contract, and/or hold the dwelling unit for the Buyer and bring an action for specific performance. The 1985 Amendment attached an executed "Assignment of Lease" dated May 20, 1985, in which the Warners were assigned "all right, title and interest to the leasehold estate and as to the equitable title to the fee estate created by that certain contract of sale" in the 1976 Agreement (the "1985 Assignment").

Copies of the notices that Beverly Hills Estate served on the Warners also were attached as exhibits to the complaint. The notices were dated December 15, 2012 and consisted of a three-day and a ten-day notice to pay rent or quit, a three-day and a ten-day notice to perform covenants or quit, and a 30-day notice to quit. The notices to pay rent or quit stated that "pursuant to the lease or rental agreement under which you hold the possession of the hereinafter described premises, there is now due and unpaid rent in the total sum of [$27,940.68]." The notices to perform covenants or quit likewise stated that "pursuant to the lease or rental agreement under which you hold the possession of the hereinafter described premises, you are in violation of the lease or rental agreement" as follows: "(1) Tenant has violated the covenants, conditions, and provisions of the lease by subletting the premises on multiple occasions without the consent of the landlord/owner. . . . [¶] (2) Tenant has failed to obtain insurance as provided for in the lease agreement. . . . [¶] (3) Tenant has failed and refused to pay taxes which are due on

4

the premises as provided for in the lease agreement. . . . [¶] (4) The tenant has hypothecated the lease without permission or consent of the landlord/owner, and the tenant has incurred secured debt thereby transferring an interest in the lease to a third party without landlord[']s permission or consent." The notices provided that unless the Warners paid rent and remedied the violations, or vacated the premises within the specified time period, Beverly Hills Estate would declare a forfeiture of the lease and institute legal proceedings to recover possession of the premises as well as rent, damages, fees and costs. In each of the notices, the "premises" were described as being located and situated at "20454 Pacific Coast Highway, Malibu, California 90265."

The complaint also included a declaration from Stephen Distaso, a registered process server, which stated that, on December 17, 18, and 20, 2012, Distaso went to the residence located at 20454 Pacific Coast Highway to serve the Warners with the notices to quit, but no one answered the door. Distaso further stated that, on December 20, 2012, he posted each notice in a conspicuous place at the residence and thereafter mailed a copy to the Warners at the 20454 Pacific Coast Highway address.

## II. Service of Summons and Complaint

On March 26, 2013, Beverly Hills Estate filed three proofs of service of summons in the unlawful detainer action. According to the proofs of service, Distaso served Martin Warner, Susan Warner, and "All Unnamed Tenants in Possession" with copies of the summons and complaint on February 21, 2013, at the 20454 Pacific Coast Highway address. Distaso indicated that he used substitute service by leaving the documents with a competent member of the household at the dwelling house or usual place of abode of the party served, and then mailing copies to the party at the 20454 Pacific Coast Highway address. The person with whom the documents were left was described as male, approximately 45 years old, five feet nine inches tall, 200 pounds, with dark hair and eyes, who refused to give his name.

In attached declarations of diligence, Distaso described his attempts to personally serve the Warners with the summons and complaint before using substitute service. As

5

stated in the declaration, Distaso went to the residence at 20454 Pacific Coast Highway on February 17, 19, and 21, 2013. On February 17 and 19, 2013, no one answered the door and there were no vehicles in the driveway. On February 21, 2013, a man who was about 45 years old with dark hair and dark eyes answered the door. He would not provide his name, but confirmed that he lived on the premises. Distaso advised the man that he had papers to serve on Martin and Susan Warner and anyone else who lived at that address, and the man agreed to accept the papers. Distaso left three copies of the summons and complaint with the man and thereafter mailed copies to the Warners and all unnamed tenants at the 20454 Pacific Coast Highway address.

### III.    Entry of Default and Default Judgment

Neither the Warners nor any tenant in possession of the premises filed a timely response to the unlawful detainer complaint. On March 26, 2013, Beverly Hills Estate filed a request for entry of default and a clerk's judgment against each of the defendants on Judicial Council of California form CIV-100. In requesting entry of a clerk's judgment, Beverly Hills Estate checked the box on the form requesting "restitution of the premises only" and "a writ of execution on the judgment." However, on the same form, Beverly Hills Estate also sought a monetary judgment of $28,525.68, consisting of $27,940.68 in past rent as demanded in the complaint plus $585 in costs. The clerk of the court entered the defaults of Martin Warner, Susan Warner, and all unnamed tenants in possession of the premises on March 26, 2013.[3]

On April 8, 2013, the clerk entered a first amended default judgment against Martin and Susan Warner on Judicial Council of California form UD-110, which is used

---

[3]    For reasons that are not clear from the record, Beverly Hills Estate filed a duplicate set of requests for entry of default and a clerk's judgment against each of the defendants on April 5, 2013, in which it asked for the same relief sought in the prior requests. In response to this second set of requests, the clerk of the court again entered the default of each defendant on April 5, 2013.

6

in unlawful detainer actions.[4]  The amended judgment provided that Beverly Hills Estate was entitled to the possession of the premises located at 20454 Pacific Coast Highway. Although it expressly stated that it was a clerk's judgment under section 1169 "[f]or possession only of the premises," it also awarded Beverly Hills Estate monetary damages consisting of $27,940.68 in past-due rent and $585 in costs.  The amended judgment further stated that the lease was forfeited.  On April 8, 2013, Beverly Hills Estate served a notice of entry of default judgment on the Warners by first class mail at the 20454 Pacific Coast Highway address.

Upon entry of the amended default judgment, Beverly Hills Estate also applied for issuance of a writ of execution and possession.  The application stated that an unlawful detainer judgment had been entered in favor of Beverly Hills Estate and against the Warners for $28,525.68 and the following property:  "Real property at 20454 Pacific Coast Highway, Malibu CA 90265 Lot 4 of Tract 26816 as recorded in Book 694 pages 66 & 67 in the office of the LA County Recorder."  The clerk issued a writ of possession for the property, as described in the application, on April 8, 2013.

## IV.    The Warners' Motion for Relief from Default

On October 2, 2013, the Warners filed a motion to set aside their defaults and to vacate the default judgment.  The Warners argued in their motion that they were entitled to relief from default on each of the following grounds:  (1) the defaults and default judgment were void under section 473, subdivision (d) based on invalid service of summons; (2) the defaults should be set aside under section 473, subdivision (b) because the failure to timely respond to the complaint was due to surprise or excusable neglect; (3) the defaults should be set aside under section 473.5 because the Warners lacked actual notice of the proceedings in time to defend the action; (4) the defaults should be set aside

---

**4**      The original default judgment was entered by the clerk on April 5, 2013 on Judicial Council of California form JUD-100, which is used in general civil actions. The original judgment awarded Beverly Hills Estate monetary damages, but did not make any order for possession of the premises.

7

under the court's equitable powers because Beverly Hills Estate did not own the dwelling house located on the premises or have a lease agreement with the Warners for occupancy of the dwelling house; and (5) the judgment was void pursuant to section 1169 because the clerk of the court exceeded its authority in entering a default judgment for any relief other than restitution of the premises.

The motion was supported by a declaration from Susan Warner. As set forth in the declaration, the Warners moved out of the house located at 20454 Pacific Coast Highway sometime in 2012 and began renting the house to Kevin Mofidi in September 2012. At all times since September 2012, the Warners had been living at an address in Shadow Hills. In December 2012, the Warners commenced an eviction action against Mofidi because he had failed to pay any rent. A judgment was entered in favor of the Warners and against Mofidi on June 28, 2013, and a writ of possession entitling the Warners to restitution of the residence was issued on that date.[5] The sheriff turned over possession of the residence to the Warners on July 24, 2013. At some point between July 24, 2013 and August 6, 2013, the Warners discovered that an unlawful detainer action had been filed against them when they went to the residence and found documents related to the action on the floor. The Warners later obtained copies of the default judgment and proofs of service of summons from the court. While the proofs of service indicated that the summons and complaint were left with a 45-year-old man with dark hair and eyes, Martin Warner was 65 years old at the time with gray hair and blue eyes. On August 6, 2013, two weeks after recovering possession of the residence from Mofidi, the Warners were evicted from the property by Beverly Hills Estate.

As further stated in the declaration, the Warners owned the house located at 20454 Pacific Coast Highway, and had a separate lease agreement for the land on which the house was built. There was a deed of trust for the house in the amount of $1.4 million,

---

[5] The declaration attached a copy of the writ of possession issued in the Warners' unlawful detainer action against Mofidi, along with a copy of a month-to-month lease agreement for the residence between the Warners and Mofidi.

8

which had been recorded with the Los Angeles County Recorder on May 30, 2007. Beverly Hills Estate purchased the land lease in December 2012, but did not purchase the house. The notices to quit on file in the unlawful detainer action showed delinquent payments of $2,328.39 per month, which was the amount due under the land lease. The Warners had a separate mortgage payment of $4,500 per month for the house, which was not a part of the lease agreement. Although the Warners were behind in their land lease payments, the house was not in foreclosure by their lender at the time Beverly Hills Estate evicted them from the entire property, including the house, on August 6, 2013.

## V.      Beverly Hills Estate's Opposition to the Warners' Motion

In its opposition to the Warners' motion to set aside the defaults and the default judgment, Beverly Hills Estate argued that the Warners properly were served with a summons and complaint by substitute service at their residence and usual mailing address, and had failed to bring their motion for relief from default within a reasonable time after entry of judgment. Beverly Hills Estate also asserted that the Warners' breach of the lease agreement gave rise to an unlawful detainer action because there was no legal distinction between a "land lease" and an "ordinary lease," and both types of leases were governed by the law of contracts. In response to the Warners' claim that the clerk of the court could not award monetary damages, Beverly Hills Estate conceded that the clerk's default judgment called for possession of the premises only and stipulated to waiving any damages award. Beverly Hills Estate also claimed that granting the Warners relief from default would displace a bona fide lessee, who had entered into a lease agreement with Beverly Hills Estate for the property following the Warners' eviction.

The opposition was supported by a new declaration from Distaso, who provided more detailed information about his prior service of summons on the Warners. According to the declaration, when Distaso went to the residence at 20454 Pacific Coast Highway on February 21, 2013, he asked the man who answered the door if the Warners were home. The man said "this was their house, but they were not home." Distaso determined that the man was "an adult apparently in charge of the premises and member

9

of the household." He handed the man copies of the summons and complaint, described the nature of the documents to him, and then left the premises. As Distaso was leaving, he looked at the mailbox affixed to the front of the residence, which had "an open cover so that anyone on the driveway can see in plain sight." Distaso saw "several letters addressed to Martin and Susan Warner, including bills [from] Southern California Edison Company, Charter Cable Television, and the City of Malibu."

As further set forth in the declaration, Distaso previously had served notices to quit on the Warners at the 20454 Pacific Coast Highway address. Prior to serving the notices, Distaso reviewed title records from the Los Angeles County Recorder and determined from those records that "Martin and Susan Warner used the premises as their usual mailing address and were the tenants in possession of the premises." Distaso attached copies of four recorded documents to his declaration, which he claimed showed that the 20454 Pacific Coast Highway property was the Warners' usual mailing address and residence.[6] He also stated that, in serving the notices to quit, he "went to the property on ma[n]y different occasions and saw the mail addressed to Martin and Susan Warner in the mailbox." Distaso never received back any documents that he had mailed to the Warners at the 20454 Pacific Coast Highway address.

The opposition also was supported by a declaration from Maureen Jaroscak, the manager for Beverly Hills Estate. According to the declaration, Beverly Hills Estate

---

[6]    The first document, entitled "Assignment of Lease," indicated that, on November 20, 2006, Martin Warner assigned his interest in the 1976 Agreement to Susan Warner as her sole and separate property. The second document, entitled "Grant Deed," showed that, on May 21, 2007, Susan Warner granted to herself and Martin Warner her interest in the 20454 Pacific Coast Highway property, including both the land and the dwelling unit. The third document, entitled "Deed of Trust With Assignment of Rents," reflected that, on September 9, 2009, the Warners, as trustors, transferred legal title in the 20454 Pacific Coast Highway property to First American Title Company of Los Angeles, as trustee, with Dojenic, LLC acting as the beneficiary. The fourth document, entitled "Notice of Trustee's Sale," stated that Susan Warner was in default under a separate deed of trust dated May 21, 2007, and that a public auction for sale of the 20454 Pacific Coast Highway property was scheduled for April 25, 2013.

10

acquired ownership of the property located at 20454 Pacific Coast Highway on December 4, 2012 pursuant to a grant deed. The Warners were the lessees of the property under a lease agreement, but were not the owners of the property and were prohibited from subleasing the premises without permission of the owner, which they never requested or received. On December 7, 2012, Jaroscak directed Distaso to serve a notice informing the Warners of the change in ownership at the 20454 Pacific Coast Highway address. Jaroscak thereafter visited the property on three to four occasions, but never found anyone at home. When Beverly Hills Estate acquired the property, the Warners had not paid rent for more than two years, had failed to maintain the premises, had failed to pay property taxes or insurance, and had subleased the premises without permission. On December 15, 2012, Jaroscak directed Distaso to serve notices to quit on the Warners at the 20454 Pacific Coast Highway address. Beverly Hills Estate later filed an unlawful detainer action against the Warners, and after obtaining a default judgment and writ of possession, Jaroscak arranged for the Los Angeles County Sheriff to evict them from the premises. On August 6, 2013, Jaroscak accompanied a sheriff's deputy to the property, and upon entry into the house, she discovered that many of the fixtures were missing, damaged, or destroyed. On August 15, 2013, Beverly Hills Estate entered into a lease agreement with Golden State Practice Management, which was recorded on August 23, 2013. Since that time, Golden State Practice Management had been in peaceful possession of the property.

Jaroscak attached a number of documents to her declaration, including a grant deed from Dojenic LLC, which was signed on August 31, 2012 and recorded with the Los Angeles County Recorder on December 4, 2012. The deed stated that Dojenic was granting to Beverly Hills Estate the real property described as follows: "An undivided one-half interest in Lot 4 of Tract No. 26816, in the county of Los Angeles, state of California, as per map recorded in book 694 pages 66 and 67 of Maps, in the office of the

11

county recorder of said county . . . [e]xcept all buildings and improvements situated on said land, which are and shall remain real property."[7]

## VI.    The Trial Court's Ruling

On December 19, 2013, the trial court held a hearing on the Warners' motion to set aside the defaults and the default judgment. In a minute order entered on that date, the trial court found that service of process was proper and denied the Warners' motion. On February 5, 2014, the Warners filed a timely notice of appeal.[8]

## DISCUSSION

On appeal, the Warners challenge the trial court's order denying their motion to set aside the defaults and the default judgment. They contend that they were entitled to relief from default under section 473, section 473.5, and the equitable powers of the court because they were not properly served with a summons and complaint and lacked actual notice of the proceeding in time to defend the action. They also claim that the remedy of unlawful detainer was not available to recover the property at issue in this case, and that even assuming an action in unlawful detainer could be properly brought against them, the relief awarded by the clerk of the court exceeded its jurisdiction.

---

[7]     Jaroscak did not explain in her declaration how Dojenic came to acquire an ownership interest in the property. Although Dojenic was identified as the beneficiary of a September 9, 2009 deed of trust signed by the Warners, there is no indication in the record that the trustee ever foreclosed on that deed. While Jaroscak's declaration also referenced a May 30, 2007 deed of trust, which she alleged was secured by a lease rather than an ownership interest in the property, a copy of this deed was not attached to the declaration or included elsewhere in the record on appeal.

[8]     On December 1, 2014, Beverly Hills Estate filed a motion to augment the record on appeal and a motion to dismiss the appeal as untimely. By separate order, this Court granted the motion to augment and denied the motion to dismiss.

12

## I.     Validity of Service of Process

We first address whether service of process on the Warners was valid. "'[C]ompliance with the statutory procedures for service of process is essential to establish personal jurisdiction. [Citation.] Thus, a default judgment entered against a defendant who was not served with a summons in the manner prescribed by statute is void.' [Citation.]" (*Sakaguchi v. Sakaguchi* (2009) 173 Cal.App.4th 852, 858.) "Under section 473, subdivision (d), the court may set aside a default judgment which is valid on its face, but void, as a matter of law, due to improper service. [Citations.]" (*Ellard v. Conway* (2001) 94 Cal.App.4th 540, 544.) "When a defendant challenges the court's personal jurisdiction on the ground of improper service of process 'the burden is on the plaintiff to prove the existence of jurisdiction by proving . . . the facts requisite to an effective service.'" (*Summers v. McClanahan* (2006) 140 Cal.App.4th 403, 413, fns. omitted; *American Express Centurion Bank v. Zara* (2011) 199 Cal.App.4th 383, 387.) "Where the question on appeal is whether the entry of default and the default judgment were void for lack of proper service of process, we review the trial court's determination de novo. [Citation.]" (*Hearn v. Howard* (2009) 177 Cal.App.4th 1193, 1200.)

Section 415.20, subdivision (b) authorizes substitute service of process on an individual in lieu of personal delivery. It provides, in relevant part: "If a copy of the summons and complaint cannot with reasonable diligence be personally delivered to the person to be served, . . . a summons may be served by leaving a copy of the summons and complaint at the person's dwelling house, usual place of abode, usual place of business, or usual mailing address other than a United States Postal Service post office box, in the presence of a competent member of the household or a person apparently in charge of his or her office, place of business, or usual mailing address other than a United States Postal Service post office box, at least 18 years of age, who shall be informed of the contents thereof, and by thereafter mailing a copy of the summons and of the complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left." (§ 415.20, subd. (b).)

13

Under section 415.20, "an individual may be served by substitute service only after a good faith effort at personal service has first been made. . . . Two or three attempts to personally serve a defendant at a proper place ordinarily qualifies as '"reasonable diligence."'" (*American Express Centurion Bank v. Zara*, *supra*, 199 Cal.App.4th at p. 389.)  Additionally, the "'"purpose of . . . section 415.20 is to permit service to be completed upon a good faith attempt at physical service on a *responsible person. . . .*" [Citation.]  Service must be made upon a person whose "relationship with the person to be served makes it more likely than not that they will deliver process to the named party." [Citation.]'" (*Hearn v. Howard*, *supra*, 177 Cal.App.4th at p. 1203.)

In the proofs of service of summons filed with the trial court, Beverly Hills Estate alleged that it had served the Warners with the summons and complaint on February 21, 2013 by substitute service at their "dwelling house" or "usual place of abode." According to the proofs of service and the supporting declaration of diligence, Distaso made three attempts to personally serve the Warners at their "residence address" on 20454 Pacific Coast Highway before leaving the documents with a 45-year-old man with dark hair and eyes who answered the door and confirmed that he lived on the premises. In a subsequent declaration, Distaso also stated that he asked the man if Martin and Susan Warner were home and was told that "this was their house, but they were not home." After the man agreed to accept the documents, Distaso mailed copies to the Warners by first class mail at the 20454 Pacific Coast Highway address.

In considering whether substitute service in this case was proper, it is undisputed that the Warners began leasing the land located at 20454 Pacific Coast Highway in May 1985, and that at times prior to September 2012, they lived in the house situated on that land.  However, the fact that a party may have resided at a particular address at some time in the past does not demonstrate that such address was their "dwelling house" or "usual place of abode" at the time of service.  In a declaration submitted in support of the motion for relief from default, Susan Warner specifically denied that she and Martin Warner were residing at the 20454 Pacific Coast Highway address as of the date of service on February 21, 2013.  Rather, as set forth in that declaration, the Warners began renting the

14

house to a third party in September 2012, and had been residing at a separate address in Shadow Hills since that time. The Warners also had initiated an eviction action against their tenant in December 2012 for failure to pay rent, and did not recover possession of the premises until eight months later in July 2013.

In opposing the motion for relief from default, Beverly Hills Estate did not dispute any of these facts. Instead, Beverly Hills Estate pointed to the Warners' lease agreement and other publicly recorded documents related to the property to argue that the 20454 Pacific Coast Highway address was the Warners' residence for the purpose of substitute service. Although the 1976 Agreement and 1985 Amendment show that the Warners acquired an interest in the property in May 1985, they do not support a finding that the Warners were still living at that address nearly 28 years later when service of process was attempted there. Likewise, the title records submitted by Beverly Hills Estate merely reflect that the Warners continued to claim an ownership and/or leasehold interest in the property at various times between 2006 and 2011. However, the records do not establish that the Warners were holding out the 20454 Pacific Coast Highway address as their place of residence at the time of service in February 2013.

Beverly Hills Estate also asserts that the 20454 Pacific Coast Highway address must be considered the Warners' residence because their lease prohibited them from subleasing the premises without the landlord's written consent. Even assuming the sublease of the house constituted a breach of the lease agreement, there is no evidence that the Warners falsely represented to Beverly Hills Estate or its predecessor-in-interest that they were residing on the property at the time of service. To the contrary, the record reflects that Beverly Hills Estate was aware the Warners had subleased the premises on multiple occasions without obtaining consent, and it actually based its unlawful detainer action against the Warners, in part, on this alleged breach. While a "'"defendant will not be permitted to defeat service by rendering physical service impossible"'" (*Hearn v. Howard*, *supra*, 177 Cal.App.4th at p. 1202), there is no evidence that the Warners decided to rent the house and move to a new residence in an attempt to evade service. According to Susan Warner, the decision to rent the house in September 2012 was made

15

in an effort to avoid foreclosure on a separate deed of trust for the house, and the Warners did not learn of the action filed against them until they recovered possession of the premises in July 2013. Because the uncontroverted evidence establishes that the Warners were no longer residing at the 20454 Pacific Coast Highway address as of the date of service, substitute service was not accomplished at the Warners' "dwelling house" or "usual place of abode" in accordance with section 415.20, subdivision (b).

In its opposition to the motion for relief from default, Beverly Hills Estate offered an alternative theory to support its claim that service of process on the Warners was proper. Specifically, it contended that the 20454 Pacific Coast Highway address was also the Warners' "usual mailing address" within the meaning of section 415.20, subdivision (b). In a declaration submitted in support of this argument, Distaso recounted that, as he was leaving the premises on February 21, 2013, he looked at the mailbox affixed to the front of the residence and saw "several letters addressed to Martin and Susan Warner, including bills [from] Southern California Edison Company, Charter Cable Television, and the City of Malibu."[9] Distaso also stated that, he had reviewed the title records for the 20454 Pacific Coast Highway property, and determined from those records that the Warners were using the premises as their "usual mailing address."

Section 415.20 does not define the term "usual mailing address." However, Black's Law Dictionary (10th ed. 2014) defines the word "usual" as "1. [o]rdinary; customary. 2. [e]xpected based on previous experience, or on a pattern or course of conduct to date." Beverly Hills Estate argues that the mail found by Distaso when he visited the premises on February 21, 2013 proves that the Warners were continuing to use the residence as their usual mailing address even if they were no longer living there. Yet

---

**9** Distaso later asserted in that same declaration that he "went to the property on ma[n]y different occasions and saw the mail addressed to Martin and Susan Warner in the mailbox which [he] noted on [his] legal pad." However, it is unclear from the declaration whether Distaso is claiming that he saw mail addressed to the Warners on many different occasions, or saw mail addressed to the Warners on one occasion in his many visits to the property.

Distaso's declaration merely shows that, on one occasion in February 2013, an electric bill, a cable bill, and an unidentified municipal bill were mailed to the attention of the Warners at the 20454 Pacific Coast Highway address. Given that the Warners were renting the house to a tenant on a month-to-month basis as of September 2012, it would not have been unusual for the utility bills for the house to remain in their name for a period of time at that mailing address. There was no evidence that the tenant was forwarding those bills or any other mail to the Warners at their new address in Shadow Hills, or that the Warners were continuing to visit the premises on any customary basis to pick up mail. Instead, the only evidence regarding the Warners' actual receipt of mail at that address was Susan Warner's statement in her declaration that they first discovered documents in the unlawful detainer action against them in July 2013, when they recovered possession of the residence from their tenant and found the documents lying on the floor.

Contrary to Beverly Hills Estate's contention, the title records also fail to show that the Warners customarily were receiving mail at the 20454 Pacific Coast Highway address at the time of service. As discussed above, the title records merely demonstrate that the Warners continued to claim an interest in the property between 2006 and 2011, and that they used that interest to obtain loans secured by a deed of trust on the property. Only one of the records, a deed of trust from September 2009, identified 20454 Pacific Coast Highway as the Warners' then current address, but it does not support an inference that the Warners were receiving mail at that address after they moved out of the residence and began renting it to a third party in September 2012. Distaso's statement that the Warners were still using the residence as their usual mailing address at the time of service is therefore not supported by the title documents or any other evidence in the record.

Based on this record, Beverly Hills Estate has failed to establish that, as of the date of service, the 20454 Pacific Coast Highway address was the Warners' "dwelling house, "place of abode," or "usual mailing address" within the meaning of section 415.20, subdivision (b). Accordingly, substitute service on Martin and Susan Warner at that

address was ineffective to constitute valid service of process, and the default and default judgment entered against each of them are void as a matter of law.

## II.     Relief from Default Under Section 473, Subdivision (d)

Beverly Hills Estate asserts that, even if service of process was improper, the Warners are not entitled to relief from default because they failed to bring their motion within the time limitations of section 473.  "Where a party moves under section 473, subdivision (d) to set aside 'a judgment that, though valid on its face, is void for lack of proper service, the courts have adopted by analogy the statutory period for relief from a default judgment' provided by section 473.5. . . . [Citations.]"  (*Trackman v. Kenney* (2010) 187 Cal.App.4th 175, 180; see also *Rogers v. Silverman* (1989) 216 Cal.App.3d 1114, 1124.)  Section 473.5 requires that a motion to set aside a default or a default judgment based on lack of actual notice of the action be filed and served "within a reasonable time, but in no event exceeding the earlier of: (i) two years after entry of a default judgment . . .; or (ii) 180 days after service . . . of a written notice that the default or default judgment has been entered."  (§ 473.5, subd. (a).)  In this case, the Warners filed and served their motion for relief from default by October 2, 2013, which was less than:  (i) two years after entry of the original default judgment on April 5, 2013, and (ii) 180 days after service of the notice of entry of default judgment on April 8, 2013.  The Warners thus complied with the mandatory limitations period of section 473.5.

Beverly Hills Estate nevertheless argues that the Warners failed to exercise reasonable diligence in seeking relief because they filed their motion five and a half months after entry of the default judgment.  However, the reasonable time requirement of sections 473 and 473.5 focuses on the period between discovery of the default and filing of the motion for relief from default.  (*Huh v. Wang* (2007) 158 Cal.App.4th 1406, 1420 [party seeking relief from default under section 473, subdivision (b) ""'"must show a satisfactory excuse for his default, and . . . diligence in making the motion after discovery of the default"'""]; *Schenkel v. Resnik* (1994) 27 Cal.App.4th Supp. 1, 4 [reasonable time provision of section 473.5 requires ""'"diligence in making the motion after discovery of

the default"'"'"].)  The undisputed evidence shows the Warners did not learn of the default, or the unlawful detainer action against them, until sometime between July 24, 2013 (when they recovered possession of the premises from their tenant) and August 6, 2013 (when they were evicted from the premises by Beverly Hills Estate).  Prior to that time, the Warners lacked actual notice of the action because they did not have possession of the property where the summons and complaint had been served, and were in an adverse relationship with the non-paying tenant who apparently accepted service on their behalf.

Therefore, while it is true that the Warners did not seek relief from default until almost six months after entry of the default judgment, they filed their motion only two months after their discovery of the default and within the mandatory time limitations of the statute.  Given the strong public policy in favor of a trial on the merits, the Warners were entitled to relief from default based on the lack of valid service of process, and the trial court erred in denying their motion to set aside the defaults and the default judgment under section 473, subdivision (d).  (See *Zamora v. Clayborn Contracting Group, Inc.* (2002) 28 Cal.4th 249, 256 ["'the provisions of section 473 . . . are to be liberally construed and sound policy favors the determination of actions on their merits'"]; *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 980 ["[b]ecause the law favors disposing of cases on their merits, 'any doubts in applying section 473 must be resolved in favor of the party seeking relief from default'"].)

### III.    Failure to State a Cause of Action in Unlawful Detainer

As a separate and independently sufficient ground for setting aside the default judgment, we conclude that the complaint filed against the Warners failed to state a cause of action in unlawful detainer.  As this Court has explained, "[i]t is well established a default judgment cannot properly be based on a complaint which fails to state a cause of action against the party defaulted because . . . '[a] defendant who fails to answer admits only facts that are well pleaded.'"  (*Falahati v. Kondo* (2005) 127 Cal.App.4th 823, 829, fns. omitted (*Falahati*); see also *Kim v. Westmoore Partners, Inc.* (2011) 201 Cal.App.4th 267, 282 (*Kim*) ["if the well-pleaded allegations of the complaint do not state any proper

19

cause of action, the default judgment in the plaintiff's favor cannot stand"].) "A default judgment is void if the trial court lacked jurisdiction over the parties or the subject matter of the complaint or if the complaint failed to 'apprise[] the defendant of the nature of the plaintiff's demand. . . .'" (*Falahati*, *supra*, at p. 830, fns. omitted.) Although "[a] court must indulge reasonable inferences in support of the factual allegations in the complaint[,] . . . the absence of essential factual allegations is fatal to a judgment against the defendant." (*Los Defensores, Inc. v. Gomez* (2014) 223 Cal.App.4th 377, 393.) "Moreover, '[w]hen considering the legal effect of those facts, we disregard any erroneous or confusing labels employed by the plaintiff.' [Citations.]" (*Kim*, *supra*, at p. 282.) "[W]hether the default and default judgment complied with constitutional and statutory requirements are questions of law as to which we exercise independent review." (*Falahati*, *supra*, at p. 828, fn. omitted.)

"Unlawful detainer actions are authorized and governed by state statute. [Citation.] The statutory scheme is intended and designed to provide an expeditious remedy for the recovery of possession of real property. [Citations.] Unlawful detainer actions are, accordingly, of limited scope, generally dealing only with the issue of right to possession and not other claims between the parties, even if related to the property. [Citation.] . . . Nevertheless, unlawful detainer proceedings are procedurally technical, with stringent service and notice requirements, and stringent procedural deadlines. [Citations.]" (*Larson v. City and County of San Francisco* (2011) 192 Cal.App.4th 1263, 1297.) Indeed, "'[i]t has long been recognized that the unlawful detainer statutes are to be strictly construed and that relief not statutorily authorized may not be given due to the summary nature of the proceedings.'" (*Underwood v. Corsino* (2005) 133 Cal.App.4th 132, 136-137.) "The statutory requirements in such proceedings '"must be followed strictly, otherwise a landlord's remedy is an ordinary suit for breach of contract with all the delays that remedy normally involves and without restitution of the demised property." [Citation.]'" (*WDT-Winchester v. Nilsson* (1994) 27 Cal.App.4th 516, 526.)

Section 1161 defines the types of contractual relationships that may give rise to an unlawful detainer action. Under the statute, the unlawful detainer "remedy is available in

20

only three situations: to a lessor against a lessee for unlawfully holding over or for breach of a lease; to an owner against an employee, agent, or licensee whose relationship has terminated; and to a purchaser at an execution sale, a sale by foreclosure, or a sale under a power of sale in a mortgage or deed of trust against the former owner and possessor." (*Greene v. Municipal Court* (1975) 51 Cal.App.3d 446, 450 (*Greene*).)  Thus, to state a valid cause of action in unlawful detainer, the complaint must allege the existence of a landlord-tenant relationship between the parties or some other relationship that legally supports the summary remedy of unlawful detainer as defined in the statute.  (*Id.* at pp. 450-451; see also *Francis v. West Virginia Oil Co.* (1917) 174 Cal. 168, 170 ["[i]n order that such an [unlawful detainer] action may be maintained the conventional relation of landlord and tenant must be shown to exist"]; *Goetze v. Hanks* (1968) 261 Cal.App.2d 615, 616 ["[t]he remedy of unlawful detainer is a statutory and summary one, and a person who seeks it must bring himself clearly within the relationship between himself and the occupier of the property that is described in the statute"].)  The complaint also must "[s]et forth the facts on which the plaintiff seeks to recover," and "[d]escribe the premises with reasonable certainty."  (§ 1166, subd. (a).)

As the Court of Appeal observed in *Greene*, in considering whether a particular agreement for real property can support an unlawful detainer action, "[t]he relationship created by the agreement must be characterized by reference to the rights and obligations of the parties and not by labels." (*Greene*, *supra*, 51 Cal.App.3d at p. 450.)  In *Greene*, the parties entered into a conditional sale agreement for real property which provided that, in the event of a default by the buyer, "all moneys theretofore paid by buyer shall belong to seller as rent and compensation for the use and occupancy of said real property, and seller shall be entitled to immediate possession thereof . . . ."  (*Id.* at p. 449.)  The Court of Appeal held that the complaint failed to state a cause of action in unlawful detainer because "[a] vendee in possession of land under a contract of sale who has defaulted in the payment of an installment of the purchase price, is not subject to removal by the summary method of unlawful detainer."  (*Id.* at p. 451; see also *Francis v. West Virginia Oil Co.*, *supra*, 174 Cal. at p. 171 ["vendee in possession is not a tenant in any

21

sense of the word, and only a tenant may be sued under . . . section 1161"]; *Goetze v. Hanks*, *supra*, 261 Cal.App.2d at p. 617 ["vendor [who] chose to sell his land, . . . created the relationship of seller and buyer," and "certain legal remedies are available to him, but not the summary one of unlawful detainer"].) In contrast, in *Provouskivitz v. Snow* (1977) 74 Cal.App.3d 554, 556-557, the parties entered into both a contract of sale and a lease agreement for real property, which provided that the sale was conditional upon the outcome of pending litigation and the buyer-lessee was taking possession of the property by way of the lease until completion of the sale. The Court of Appeal held that an unlawful detainer action could be brought against the buyer-lessee for failure to pay rent under the lease because "possession was assumed by virtue of the lease agreement," and "[s]o long as possession is achieved through the landlord-tenant relationship, unlawful detainer may properly be utilized to regain possession." (*Id*. at p. 558.)

In this case, Beverly Hills Estate filed an unlawful detainer complaint against the Warners in which it sought restitution of certain property to which it had no legal right of possession. The complaint alleged that Beverly Hills Estate was the "owner" of the "premises" located at "20454 Pacific Coast Highway, Malibu, California, 90265," and that the Warners were in "possession of the premises" pursuant to a written lease agreement with a predecessor-in-interest. In addition to monetary damages and forfeiture of the agreement, the complaint sought "possession of the premises," but made no distinction between the land and the dwelling house situated on the land. The notices to quit, which were attached as exhibits to the complaint, similarly alleged that the Warners were in possession of the "premises" located at "20454 Pacific Coast Highway, Malibu, California 90265" pursuant to a "lease or rental agreement," and demanded that the Warners either remedy certain violations of the lease agreement or vacate the "premises" within a specified time period. The notices to quit likewise did not distinguish between the land and the dwelling house. In contrast, the 1976 Agreement and 1985 Amendment, which were alleged to form the basis of the complaint and were also attached as exhibits, demonstrated that there was a critical distinction between ownership of the land and ownership of the house. Under the amended agreement, the Warners were lessees of the

22

land pursuant to a long-term land lease, but were buyers of the dwelling house pursuant to a contract of sale.**10** While Beverly Hills Estate alleged in its complaint that it was a successor-in-interest to the lease, it did not allege that it was a successor-in-interest to the contract of sale or had otherwise acquired an ownership interest in the dwelling house at any time. The agreement on which Beverly Hills Estate was basing its unlawful detainer complaint thus showed that Beverly Hills Estate was seeking possession of a dwelling house on that property which it did not own.

The record further reflects that, at the time the trial court ruled on the Warners' motion for relief from default, there was additional evidence before the court that Beverly Hills Estate did not have any ownership interest in the dwelling house. In a declaration filed in support of the Warners' motion, Susan Warner specifically stated that Beverly Hills Estate did not own the dwelling house on the property. She also asserted that the Warners were the owners of the house, and that they never entered into a lease agreement with Beverly Hills Estate for occupancy of the house. In opposing the Warners' motion, Beverly Hills submitted evidence showing that it acquired its interest in the property pursuant to an August 2012 grant deed. However, by its terms, the grant deed solely conveyed the land located on the property and expressly excluded "all buildings and improvements on said land." Despite this evidence, Jaroscak, the manager of Beverly Hills Estate, submitted a declaration in opposition to the Warners' motion in which she described "premises" owned by the company as including the house, and alleged that the Warners had breached their lease agreement, in part, by causing damage to the house. The record also shows that, in requesting entry of a default judgment against the Warners and a writ of possession, Beverly Hills Estate did not limit its claim for relief to restitution of the land, but rather sought possession of the entire premises, including the

---

**10** "When a plaintiff attaches a written agreement to his [or her] complaint, and incorporates it by reference into his [or her] cause of action, the terms of that written agreement take precedence over any contradictory allegations in the body of the complaint. 'If facts appearing in the exhibits contradict those alleged, the facts in the exhibits take precedence.' [Citations.]" (*Kim*, *supra*, 201 Cal.App.4th at p. 282.)

23

house, as a remedy for unlawful detainer. The Warners were thereafter evicted from both the land and the house by the Los Angeles County Sheriff, and possession of the entire premises was given to Beverly Hills Estate.

On appeal, Beverly Hills Estate does not identify any provision in the 1976 Agreement or 1985 Amendment which could support a finding that it held an ownership interest in the dwelling house at the time it commenced the unlawful detainer action against the Warners. Instead, Beverly Hills Estate asserts that there was "no reasonable dispute that [it] was the owner of the property" because it presented "a recorded deed showing title vested in Beverly Hills Estate for the premises," and "[t]here was no showing that [the Warners] own the building." Beverly Hills Estate also points out that granting the Warners relief from default would displace a bona fide lessee. However, as the party seeking the summary remedy of unlawful detainer, the burden was on Beverly Hills Estate to demonstrate strict compliance with the statute, including establishing the existence of an ownership interest that would entitle it to possession of the specific premises sought. The grant deed on which Beverly Hills Estate relies to support its right of possession directly contradicts its claim that it had an ownership interest in the entire premises, and it offers no other evidence to show that an unlawful detainer remedy was available in this case.

Beverly Hills Estate further argues that any dispute over ownership of the house cannot be considered on appeal because the Warners failed to raise the issue of title in either their motion for relief from default or in a separate action to quiet title, and the only triable issue in an unlawful detainer proceeding is the right to possession of the premises. However, "[f]ailure of a complaint to state a cause of action and lack of jurisdiction of the trial court are matters that may be raised initially on appeal[,] . . . are not waived by any failure to raise them in the trial court." (*Greene*, *supra*, 51 Cal.App.3d at p. 450; see also *Falahati*, *supra*, 127 Cal.App.4th at p. 831, fn. 18 ["questions of jurisdiction are never waived and may be raised for the first time on appeal as may the failure of the complaint to state a cause of action"].) In any event, the record reflects that the Warners expressly argued in their motion that an unlawful detainer proceeding was improper

because Beverly Hills Estate "did not own the residential dwelling at the time of filing," "there was no oral or written lease between the parties for rental of the premises," and "[t]here was only a land lease and . . . Susan Warner own[ed] the home and related improvements." Additionally, contrary to Beverly Hills Estate's claim, the Warners were not required to bring a separate quiet title action to challenge these defects in the complaint. "While the validity of titles may not be tried in proceedings [for unlawful detainer], evidences of title are admissible to show the character or extent of the possession claimed." (*Francis v. West Virginia Oil Co.*, *supra*, 174 Cal. at p. 170.)

Because the complaint filed by Beverly Hills Estate failed to state a cause of action in unlawful detainer, the default judgment entered against the Warners is void as a matter of law and must be reversed. (*Greene*, *supra*, 51 Cal.App.3d at pp. 451-452 [reversing default judgment in unlawful detainer action where the "complaint, if it states a cause of action at all, states it on a theory other than unlawful detainer"].) This conclusion necessarily means that if Beverly Hills Estate wishes to maintain an action against the Warners for allegedly violating the terms of their lease agreement, it must amend its complaint to state a cause of action that would entitle it to the specific relief sought, and must serve its amended complaint on the Warners in accordance with the statutory procedures for service of process. The Warners shall then be entitled to file a responsive pleading to the amended complaint within the applicable statutory period.[11]

---

[11]    In light of this conclusion, we need not address the parties' remaining arguments concerning whether the Warners were entitled to relief from default under section 473, subdivision (b), section 473.5, or the equitable powers of the court, and whether the clerk exceeded its jurisdiction in awarding monetary damages in the default judgment.

## DISPOSITION

The order denying the Warners' motion to set aside their defaults and the default judgment is reversed and the matter is remanded to the trial court with directions to enter new and different order vacating the defaults and the default judgment entered against Martin and Susan Warner and to conduct further proceedings in accordance with this opinion. The Warners shall recover their costs on appeal.


ZELON, J.


We concur:


PERLUSS, P. J.


IWASAKI, J.[*]


---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.